# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| RHONDA L. CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:13-CV-00386 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Rhonda L. Carter ("Carter") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Carter alleges that the Administrative Law Judge ("ALJ") erroneously found that Carter can frequently reach, handle, and finger. Carter argues instead that she can only occasionally reach, handle, and finger. She contends that her more restrictive functional limitation, coupled with the ALJ's finding that Carter can only work at the sedentary exertional level, should have led to a finding that she was disabled. Carter also claims that the ALJ improperly discredited Carter's testimony about the severity of her limitations. I conclude that substantial evidence supports the Commissioner's decision on both grounds. Accordingly, I **RECOMMEND DENYING** Carter's Motion for Summary Judgment (Dkt. No. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Carter failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Carter protectively filed for SSI and DIB on July 31, 2009, claiming that her disability began on July 15, 2008. R. 193-99, 209. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 121-26. On February 14, 2012, ALJ Joseph T. Scruton held a hearing to consider Carter's disability claim. R. 40-63. Carter was represented by an attorney at the hearing, which included testimony from Carter and vocational expert Robert Jackson. R. 40-63.

On April 23, 2012, the ALJ entered his decision analyzing Carter's claim under the familiar five-step process[2] and denying Carter's claim for benefits. R. 24–33. The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520);

Carter suffered from the severe impairments of degenerative disc disease of the cervical spine with signs of cervical radiculopathy, mild degenerative changes of the lumbar spine, mild arthritis of the hips, and obesity. R. 26. He further found that Carter suffered from the severe impairments of hypertension and diabetes mellitus, both of which were largely controlled with medication and treatment. R. 26. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 27. The ALJ further found that Carter retained the RFC to perform a range of sedentary work with additional limitations. R. 28. The ALJ found Carter unable to perform jobs that required more than occasional kneeling, climbing, crouching, or stooping and that she could frequently (but not constantly) reach, handle, and finger, but was limited to seldom (less than occasional) overhead reaching bilaterally. R. 28. The RFC also stated that Carter would be able to understand, remember, and carry out simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. R. 28.

The ALJ determined that Carter could not return to her past relevant work as a sales attendant (R. 31), but that she could work at jobs that exist in significant numbers in the national economy, such as telephone order clerk and general production worker. R. 32. Thus, the ALJ concluded that Carter was not disabled. R. 33. On July 3, 2013, the Appeals Council denied Carter's request for review (R. 1-4) and this appeal followed.

---

Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

### Nonexertional Limitation

Carter argues that the ALJ erred by finding that she can frequently (but not constantly) reach, handle, and finger. R. 28. Carter asserts that the medical evidence instead shows that she can "at best" only occasionally reach, handle, and finger. Dkt. No. 16 at 8. For support, Carter points to her diagnosis of cervical radiculopathy, R. 423, R. 30, and the fact that she was treated for cervicalgia in July 2007. R. 295. Additionally, Carter asserts that her testimony at the hearing before the ALJ shows that she experiences numbness in her hands at least three or four times per week and that it lasts anywhere from a couple of hours to several days. R. 53. Finally, Carter posits that because the ALJ found that she is limited to the sedentary exertional level (R. 31), and because Social Security Ruling 96-9p directs that sedentary work activity requires good use of both the hands and fingers (which she alleges not to have), the ALJ should have found Carter disabled.

In July 2007—before her alleged onset date of July 2008—Carter was treated for complaints of mid back and left shoulder pain by Dr. Michael Patrick at the Roanoke Valley Medical Clinic. R. 295. Dr. Patrick found that Carter had "decreased strength in her left hand," but full range of motion in her left arm. He noted "diminished reflex brachioradialis and biceps tendons[,]" as well as tenderness in the trapezius, shoulder, back between the shoulder and scapula, and tenderness coming down the arm. R. 295. He diagnosed her with cervicalgia, with a suspicion of cervical neuritis, ordered an MRI, and prescribed her Lortab, Ibuprofen, and Flexeril. R. 295.

Carter saw Dr. Jasmin Jerez-Marte from March 2008 to November 2010 at the Roanoke Valley Medical Clinic. R. 270-94, 325-27, 335-54. Throughout this period, Carter was treated for

4

non-insulin dependent diabetes, hyperlipidemia, and hypertension. R. 270-94, 325-27, 335-54. Dr. Jasmin Jerez-Marte also recommended lifestyle changes involving diet, exercise, and smoking. See R. 271, 276, 286, 290, 344.

Carter also complained of neck pain, shoulder pain, and back pain throughout her visits to the Roanoke Valley Medical Clinic. R. 270-94, 325-27, 335-54. The medical findings from those visits, however, revealed only minor limitations in functioning. In April 2008, Dr. Jerez-Marte observed a full range of motion with normal strength, motor tone, and mass in Carter's upper extremities and normal, intact touch, but decreased abduction in her right hip. R. 289. Jerez-Marte again found a full range of motion and normal strength and touch in March 2009, August 2009, January 2010, and July 2010. R. 275, 271, 326, 343-44. Dr. Jerez-Marte observed positive straight leg raises at Carter's January 2010 and July 2010 appointments. R. 326, 343.

In January 2011, Carter went to New Horizons Healthcare complaining of back pain and neck pain, but no specific diagnosis was made as to those complaints, other than an assessment of "back pain." R. 366-68. In October 2011, Carter visited Dr. Kamenskaia at Carilion Clinic where she was observed to have a full range of motion, normal, intact touch, and her straight leg test was negative, although her back was tender to palpation. R. 375. She visited Dr. Kamenskaia a month later in November 2011, and again had a full range of motion, normal sensation, and negative leg raises. R. 392. Significantly, Carter also reported her pain to be 3 out of 10 during this visit. Id. On November 8, 2011, Carter had an x-ray of her lumbar spine that showed degenerative changes but they were determined to be mild to moderate. R. 431. In addition, in January 2012, Carter saw Dr. Richard Truxillo at Carilion Clinic where he noted her diagnosis of radiculopathy of the cervical region. R. 423. Dr. Truxillo also found that Carter had a full range of motion and normal, intact touch, and noted that her back was not tender to palpation. R. 422.

5

State agency medical consultants Drs. McGuffin and Hartman both reviewed Carter's records and found her to have no manipulative restrictions. R. 91, 93, 108, 110. Dr. Hartman noted that even though Carter may have some discomfort, she was able to sit, stand, and move about within normal limits and that she had good strength, sensation, and motion. R. 110. Both doctors concluded that her diabetes was controlled with medication and diet. R. 110, 93.

There is substantial evidence in this case to support the ALJ's conclusion that Carter can frequently reach, handle, and finger. R. 28. None of the medical evidence described above compels a contrary conclusion. Notably, Carter has not pointed to any specific opinion or limitations imposed by a treating physician that she is more limited in her functioning, and nothing in the medical records requires a finding of a more severe limitation as to reaching. It is true that, in December 2011, Dr. Kamenskaia offered the conclusory opinion that Carter was unable to engage in substantial gainful activity for a period of twelve months, R. 408-09, but the form he completed merely references, "back, hips and neck problems" and does not explain how those would prevent her from performing sedentary work with frequent reaching, so long as she was limited to only seldom overhead bilateral reaching. Dr. Kamenskaia's opinion also does not impose any specific limitations. See Craig v. Charter, 76 F.3d 585, 590 (4th Cir. 1996) (if a treating physician's opinion is not supported or is otherwise inconsistent with the record "it should be accorded significantly less weight"). Additionally, the ALJ explained the reasons why he did not credit that opinion, including that it was not supported by objective medical evidence of record, such as the lab reports and repeated examinations not showing that Carter was unable to use her hands or had numbness in her hands or arms. R. 31. See 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) (if an ALJ does not give controlling weight to a treating physician's opinion, the ALJ must "give good reasons" for that decision). Moreover, although Carter raises the issue, she

6

Case 7:13-cv-00386-MFU-RSB   Document 24   Filed 02/10/15   Page 6 of 10   Pageid#: 631

has not argued that the failure to credit Dr. Kamenskaia's opinion itself is an error requiring reversal. See generally Dkt. No. 16 at 11.

Carter has a history of back pain and neck pain and complaints of the same, and lab reports that support mild to moderate degenerative changes. But her exams during the same years reflected only mild impairment in functioning, if any. The ALJ accounted for Carter's physical limitations her RFC to sedentary work with no more than seldom (less than occasional) overhead reaching bilaterally. In short, evidence supports the ALJ's determinations related to Carter's physical impairments, exertional and nonexertional limitations, and her RFC.

## Credibility

Carter also argues that the ALJ improperly found that her testimony regarding the severity of her symptoms was not credible. Dkt. No. 16 at 9-12. Carter testified that she experiences numbness in her hands at least three or four times per week and that it lasts anywhere from a couple of hours to several days. She also claimed that she could not sit or more than thirty to forty-five minutes at a time, R. 52, and that she could stand still for only twenty minutes at a time and stand approximately thirty to forty-five minutes if moving around. R. 55. Carter claims that the ALJ improperly used Carter's conservative treatment as a basis to find her allegations not fully credible. R. 30. In addition, Carter claims that there is substantial medical evidence supporting Carter's testimony.

The ALJ is charged with weighing all of the evidence and assessing the claimant's credibility, and a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the

7

pain the claimant alleges." Hines v. Barnhart, 453 F.3d 559, 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)).

Here, the ALJ's credibility determination is supported by substantial evidence and should not be disturbed. First, there is substantial evidence supporting the ALJ's decision to use Carter's conservative treatment as a basis for assessing her credibility. Carter's impairments were largely manageable with medications and lifestyle changes. R. 271, 286, 341, 344, 368, R. 30 ("[T]he record reflects that those conditions are largely controlled with medication and treatment."). R. 30. Although there is some evidence in the record that Carter was unable to afford some treatment, even the treatment that was recommended for her back and neck pain (regardless of whether she received it) was fairly conservative. Therefore, the ALJ did not err in using Carter's conservative treatment as a basis to find her allegations not fully credible.

Even without this basis, there is still substantial medical evidence in the record showing that Carter's testimony was not credible. The ALJ took into account all of Carter's impairments including her cervical radiculopathy, degenerative disc disease, arthritis of the hips, obesity, diabetes, and hypertension. R. 30. First, the ALJ noted that her cervical radiculopathy primarily affects the neck, shoulders, and upper arms. R. 30. In addition, her statements regarding her symptoms' intensity are inconsistent with her ability to type on a computer and fill out her disability forms by hand. R. 30. Finally, the ALJ noted that medical evidence shows her degenerative disc disease and hip arthritis are mild in nature. R. 30. Therefore, he concluded that her testimony was inconsistent with medical evidence documenting positive responses to physical therapy, positive responses to medication, and her self-report of her pain being a "3" on a scale of 1 to 10. R. 30. Furthermore, even though the ALJ did not find Carter's own description of her limitations entirely credible, he nonetheless imposed some fairly severe limitations as part

8

of her RFC, including limiting her to sedentary work and limiting her to only seldom reaching overhead. Thus, he clearly took some of her described limitations into account.

My inquiry is not whether Carter's testimony is corroborated by other evidence. Instead, my inquiry is whether ALJ's decision is supported by substantial evidence in the record before the Court. 42 U.S.C. § 405(g). As substantial evidence does support the ALJ's conclusion regarding Carter's credibility, I cannot recommend remanding or reversing the final decision of the Commissioner. If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. Spencer v. Barnhart, CIV A 706CV00420, 2007 WL 1202865, at *1 (W.D. Va. Apr. 20, 2007) (citing Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001)). Here, the ALJ's decision identifies the evidence forming the basis of his credibility determination, and adequately explains his reasons for finding Carter's statements about her symptoms not fully credible. I must therefore affirm the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

9

to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

    Enter: February 10, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge