CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 04 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RHONDA L. CARTER, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:13cv00386 |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on February 10, 2015, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff has filed objections to the report and this matter is now ripe for the court's consideration.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any

> issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such

general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

In her objections to the report and recommendation, Carter raises two arguments that essentially mirror the arguments raised on summary judgment. First, she argues that the magistrate judge erroneously concluded there is substantial evidence in the record to support the Administrative Law Judge's (ALJ) finding that plaintiff can frequently reach, handle, and finger. More specifically, she claims that the magistrate judge "erroneously found that plaintiff did not point to any specific opinion or limitations from a treating physician that plaintiff is more limited in her functioning." Pl.'s Obj., Dkt. # 25, at 1. Carter also argues

3

that the magistrate judge erred in finding the ALJ properly assessed her credibility. The court has reviewed de novo those portions of the report and recommendation to which Carter has specifically objected and concludes the Commissioner's decision is supported by substantial evidence.

## III.[1]

At issue on summary judgment was Carter's ability to reach, handle and finger. The ALJ determined that Carter can perform sedentary jobs that require "frequent (but not constant) reaching, handling, and fingering." (Administrative Record, hereinafter "R." at 28.) Carter contends that, at best, she can only occasionally reach, handle and finger and, relying on Social Security Ruling 96-9p, argues that because sedentary work requires "good use of both the hands and fingers," she meets the definition of disability. Pl.'s Summ. J. Br., Dkt. # 16, at 8. The magistrate judge concluded that none of the medical evidence in the record compels a conclusion contrary to the one reached by the ALJ. Report & Recommendation, Dkt. # 24, at 6.

In her objections to the magistrate judge's report and recommendation, Carter takes issue with the magistrate judge's statement that "Carter has not pointed to any specific opinion or limitations imposed by a treating physician that she is more limited in her functioning [than determined by the ALJ], and nothing in the medical records requires a finding of a more severe limitation as to reaching." Report & Recommendation, Dkt. # 24, at 6. Carter points specifically to two medical records she claims document her limited functioning in her hands, both of which the magistrate judge considered in his report.

---

[1] Detailed facts about Carter's impairments and medical and procedural history can be found in the report and recommendation (Dkt. # 24) and in the administrative transcript (Dkt. # 8). As such, they will not be repeated here.

4

First, she claims that a treatment note from Michael Patrick, M.D., documents decreased strength in her left hand. Carter presented to Dr. Patrick on July 26, 2007[2] complaining of mid-back and left shoulder pain. Dr. Patrick noted, however, that when questioned further, Carter stated the pain is in her neck:

> It comes down her trapezius to her left shoulder. It goes down her back between her scapula and spine. It comes down her shoulder and down into her arm and there is some numbness in her fingertips. In the morning when she gets up, she has a difficult time moving. . . .

(R. 295.) Upon examination, Dr. Patrick observed:

> She has decreased strength in the left hand. She is holding her left arm at an odd angle to protect it. She has full range of motion so no evidence of rotator cuff injury. She has diminished reflex brachioradialis and biceps tendons. There is tenderness in the trapezius, tenderness in the shoulder, and tenderness coming down the arm. Tenderness down her back between the shoulder and the scapula. The muscles are spasmed.

(R. 295.) He diagnosed Carter with cervicalgia, noting he "suspect[ed] cervical neuritis," and ordered an MRI of her cervical spine. (R. 295.) No MRI appears in the record, however.[3]

The second medical record Carter points to in her objections is a treatment note from Dr. Truxillo from January 10, 2012, which reflects a diagnosis of cervical radiculopathy. (R. 423.) Despite this diagnosis, however, there is nothing in this record that documents any functional limitation in Carter's use of her hands or upper extremities. In fact, Carter presented complaining of radicular pain down the back of her legs—not her arms. (R. 421.) And Dr. Truxillo noted upon examination that Carter had full range of motion in her extremities and that she was neurologically intact. (R. 422.)

---

[2] This record from Dr. Patrick is dated prior to Carter's alleged disability onset on July 15, 2008.
[3] A treatment note from October 2011 indicates Carter reported never having previously received x-rays or an MRI. (R. 374.) The x-rays taken later, in November 2011, reveal moderate osteoarthritic changes in her lumbar spine. Carter was thereafter referred to pain management. (R. 402.)

5

These two treatment notes, standing alone, do not establish that Carter is unable to frequently reach, handle or finger. The court has reviewed the entirety of the medical evidence in this case and finds no evidence to suggest that Carter is limited to a greater extent than accounted for by the Administrative Law Judge. To be sure, the record documents her ongoing treatment for diabetes mellitus and persistent complaints of back pain. But Carter did not complain of any numbness, weakness, or decreased sensation in her hands, aside from Dr. Patrick's single treatment note from 2007. At one visit to Dr. Jerez-Marte in July 2008, Carter complained of back pain that radiated down both arms. (R. 285.) Examination revealed that she was tender at her thoracic spine and lumbar spine. (R. 286.) She was diagnosed with lumbago[4] and prescribed Flexeril. (R. 286.) None of the other medical records, however, dating from 2008 to 2012, reflect any functional limitation whatsoever in Carter's ability to reach, handle or finger. In fact, these records reveal that she consistently had normal range of motion, strength and motor tone in her upper extremities, and that sensation was intact bilaterally. (R. 271, 275, 289, 325-26, 341-44, 348-50, 368, 375, 422, 442, 488.) Moreover, the reviewing state agency physicians determined that Carter has no manipulative limitations and no limitations in her ability to operate hand controls. (R. 91, 98, 107-08.) In spite of this evidence (or lack thereof), the ALJ limited Carter to frequent, rather than constant, reaching, handling and fingering. As such, the magistrate judge did not err in concluding substantial evidence supports the ALJ's finding in this respect.

## IV.

Carter further objects to the magistrate judge's finding that the ALJ properly assessed her credibility. At the administrative hearing, Carter testified that she experienced numbness in her hands three or four times per week, which lasts anywhere from a few hours

---

[4] Lumbago is defined as pain in the lumbar region. Dorland's Illustrated Medical Dictionary 1069 (30th ed. 2003).

to a few days. (R. 53.) In determining Carter's statements were not credible to the extent inconsistent with the ALJ's residual functional capacity assessment, the ALJ held:

> The medical evidence of record documents cervical radiculopathy, but clinical findings indicate that it primarily affects the neck, shoulders, and upper arms; thus, there is nothing that would suggest that claimant has substantial limitations in handling or fingering. Claimant does not have carpal tunnel syndrome, and there is no evidence of record (observable signs or findings on examination) that would support her allegation of intermittent numbness in the hands that occurs 3-4 times [per week and] last several hours to days at a time. Notably, this allegation is also inconsistent with claimant's testimony and other statements of record that she does typing on a computer and completed by hand the forms and questionnaires used to support her application for benefits. Additionally, claimant's testimony at the hearing failed to elaborate on how she is affected by the upper extremity numbness she claims. Thus, although the undersigned accords some weight to claimant's subjective complaints concerning numbness in the upper extremities (as evidenced by a restriction on constant handling and fingering in the residual functional capacity found by the undersigned herein), there is no evidence of record to show why claimant would be unable to use her hands in some fashion of up to two-thirds of the work day. However, given that claimant's neck problems are documented in the record, the undersigned finds that claimant is limited to seldom (less than occasional) overhead reaching bilaterally.

(R. 30.)

Carter takes issue with the ALJ's reliance on the fact that she was able to complete her disability forms by hand, arguing it was unfair for him to conclude that she can frequently use her hands when there is no indication as to how long it took her to complete the paperwork. Pl.'s Obj., Dkt. # 25, at 2. And as for her ability to type on a computer, Carter argues she testified she typed her resume over a period of time. Id.

Putting aside this reference to Carter's ability to complete the disability paperwork, however, the ALJ still properly assessed Carter's credibility as regards the degree of her claimed functional limitation. A claimant's statements alone are not enough to establish a

7

physical or mental impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a). Subjective evidence cannot take precedence over objective medical evidence or the lack thereof. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986)). Plainly, the ALJ gave some credit to Carter's subjective complaints by limiting her to sedentary work that requires frequent—not constant—reaching, handling and fingering. But as explained supra, the medical evidence in this case does not indicate that she is any more limited than that in her ability to use her hands.

Carter also contends that the ALJ erred in concluding that her cervical radiculopathy primarily affects the neck, shoulders, and upper arms. In support of this argument, Carter cites only to her own testimony concerning the pain and numbness she says she experiences in her hands and upper extremities. Again, the ALJ was not required to accept Carter's representations as to the limiting effects of her impairments without objective evidence to support them.[5] The ALJ conducted a proper credibility analysis in this case and determined that Carter's statements concerning the intensity, persistence and limiting effects of her impairments were not credible to the extent they are inconsistent with the ALJ's RFC determination. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

---

[5] The same goes for Carter's complaints of chronic pain that limits her ability to sit for more than 30 to 45 minutes and requires her to lie down during the day. (R. 52, 54.)

8

Finally, Carter takes issue with the ALJ's reliance on the fact that her treatment has been conservative, arguing she has limited resources. The ALJ mentions Carter's conservative treatment at the end of a lengthy discussion concerning Carter's allegations and the lack of objective medical findings to support them. He stated: "Additionally, the undersigned would be remiss i[f] he failed to note that the medical evidence of record is not extensive and treatment has been quite conservative in nature." (R. 30.) There is simply nothing improper about this statement by the ALJ. Carter's treatment has indeed been conservative, and the objective findings upon examination documented in those treatment records do not support the degree of functional limitation Carter claims to experience. The court finds no reason to disturb the ALJ's credibility determination in this case. See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

## V.

At the end of the day, it is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla

9

and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Carter objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 03-03-15

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge